Good morning. I'm Brian Altman on behalf of the appellants. I'd like to also reserve three minutes for rebuttal at this time. Your Honors, the appellees essentially argue that the entire dispute arises out of and relates to complaints under the Individual with Disabilities Act, IDEA, and this is simply inaccurate. The state put order and the placement actions are not at issue here. An analysis of the IDEA, to the extent that that's valuable, must relate to subsection F of section 1415, which provides for an impartial due process hearing for complaints under subsection B-6. I just want to get a timeline on this, if I could. At one point, your client did proceed to an administrative hearing and got some relief at that point, did it not? That is correct. How long did that process take? I don't know the entire length of the process, but they actually, which also underscores the point that the appellee's attempts to distinguish certain cases are no longer valid. No, no, no. Don't get me into that. I just want to know the timeline. They did on that particular instance and got a reimbursement order, as I understand. That is correct. Okay. And you don't know how long that process took? I do not know how long that process took. And are you, is it your position then that none of the issues that were pled in the complaint, including the one Judge, the other Judge Fischer, in the district court, found was a kind of issue that could have been resolved or addressed, at least in part, in an administrative proceeding? That's correct. Our position is that none of them. None of them. They're all retrospective, they're all, there's nothing in your complaint that could have been addressed by an administrative proceeding. That is correct, because those remedies that would be applicable simply are not available. What about failure to reimburse them for, as therapy conducted pursuant to the stay-put order? I don't believe that the administrative hearing is empowered to do that. What was the reimbursement they got? The reimbursement, I'm actually not certain in terms of what exactly the basis for the reimbursement. They just received, or not just, but they received a special education hearing order that has, to some extent, resolved placement, the placement acts for their son. What about repeatedly set Shane's IEP on the same date and time, but different location as the Kitasi's other child? Why couldn't that have been remedied? Because that's, we would be asking for injunctive relief, which the administrative hearing officer could not provide. Are you saying that an administrative officer can't tell the school district that it's got to comply and make the educational process, the IEP implementation, effectively work? I'm not sure if they could do that. However, what they did is they, Well, how do you know they can't? They hamstrung the Kitasi's, the parents themselves. Who did? Who did? The appellees. Well, so why couldn't that be resolved in an administrative proceeding? I don't know if there's any one particular allegation that could have been. However, the lion's share of the Well, that's not my question. My question was, and you said all of them, all of them, 100 percent, could not have been addressed in the administrative proceeding. What I'm trying to get a handle on is there is a process that this Court has made clear needs to be exhausted because the whole purpose of this administrative process is to bring the school district and disappointed or unhappy parents to a process that provides an educational remedy. It's the child who is the important person here. And to the extent a parent is being screwed around, if you will, and the IEP implementation process is being compromised, coming to federal court with a, to get a canon of, you know, firing the canon of monetary damages in retrospect may be appropriate at some point in the process. But the point of, at least as I understand our case law, is to get the parties before a mediator, if you will, someone who can address the child's circumstance. And what clearly troubled the district court here was that there were some elements of the complaint, at least some elements of your complaint, that could or should have been addressed at an administrative hearing. Because otherwise you've got a district court trying to referee something that, for example, the process of getting the meeting dates so that the parents can go to it. I don't understand why that can't be remedied. Well, it's not clear. And just to round up so you can address it all. That's why I asked at the beginning, how long did the other process take? If your answer is there's no immediate remedy, it's not timely, it's, we can't, you know, it's ineffectual. But I don't see that in the record. I just see that they didn't do it. Well, I do know that what they can address has been restricted to the identification, evaluation, or educational placement, which does not allow for remedying the situation where they've singled out the parents, videotaped them, ordered them out of the classroom. That may be. But it is clear that under the process that's established and that the burden on the school districts, they have a duty to implement the IEP. And the administrative process is there to allow the parents to go in and say they are thwarting the implementation. And obviously a lot of that may take place when they don't allow the parents to participate in the process appropriately. That clearly is covered by the administrative process, is it not? It is, but that's the initial dispute. Everything else following that is the actions that were taken where they're directed at and exclusively involving the appellants, not their son. They're saying, look at what was done to us. It would be different, Your Honors, if we were standing here before you saying we're not happy with the placement of their son, or we don't like the assessment, or we don't like the interim education plan. They're actually saying. But you're saying you couldn't, if they were, if they found out that they were deliberately, as you allege, setting the IEP meetings on different places at the same time to prejudice their participation in one of the childs, that that had nothing to do with the child? No, it doesn't. It had to do with tripping up the appellants themselves since they have five children. And as part of the implementation process, you're saying that isn't remediable by the administrative process? It might be peripherally remedial. I think what it is, though, is it's not directed at their son. It's directed at them. Yes, but look, this is what I'm trying to understand here. I mean, I'm not denigrating in any way, assume the facts in favor of your client, that the district horsed them around and was trying to interfere, if we accept your complaint as true, with the fair implementation, the constructive implementation of the IEP, and responding to the parents' concerns. And if they were deliberately scheduling IEP meetings, implementation meetings, progress repeats, failing to give reports, those are processes that presumably need to be addressed ASAP, not by a claim for damages to the parents later, but they are impairing the implementation of the IEP as it affects the child. And I don't understand your argument, your claim, that that could not have been addressed in an administrative process. I don't believe that the appellees were trying to hold up the IEP. I think what they were doing is they were just trying to get their principal focus was let's punish the Katases because they've been a squeaky wheel. They've complained. They've articulated their grievances. We're going to get back at them. We're not saying we're not going to implement the IEP. We're going to do all sorts of things to make sure that we punish and harm and retaliate and discriminate against the Katases. That's how they took it. But the effect of it was to prevent the parent from participating in what the parent is entitled to participate in, which are meetings and getting progress reports. I would say in that one particular allegation that I would concur that that was the residual effect. Not a residual. That is the immediate effect. We're not talking residuality here. We're talking about prejudice to the child. And that's what I'm wondering as to why the parents didn't seek to get a remedy on behalf of their child. Why wasn't that taken before an administrative process? I think that the idea that they would have to exhaust their administrative remedies in the face of the barrage of discrimination and retaliatory acts that they were facing would have been futile. I think that the argument of the philosophy of the administrative process. I'm sorry. I mean, you've told us in the reply brief in your supplemental excerpts that they did continue and have subsequently exhausted the administrative process. They certainly have pursued their own, and they've been vigilant about protecting their son's education. That's not to say it's futile and pointless, because they continued through the process. The question that Judge Fischer is trying to pose is, why didn't they, if they had separate claims, and I accept again at this stage they do, why didn't they wait until after the administrative process had been completed to pursue those separate claims? I mean, at this point, is there really any difference? Filing new, remanding for renewal, isn't it the same thing? Well, all of the harm that's been thwarted upon them, all the things that have been done to them have already occurred. Why not proceed to the appropriate forum? I don't agree with the appellees that Federal courts are not equipped or capable of assessing the harm that's caused from retaliation and discrimination. So they did appeal, and they did approach the Federal court. In fact, the question that I would somewhat philosophically pose is, what forum was available to them for the harm that they themselves suffered, not their son, what was done to them? The answer to that is, if it was strictly and not subject to remediation through the administrative process, it's clear that they have an opportunity to sue the Federal court for retrospective damages. What I am concerned about here, because whatever we were to do in this case could set precedent for how future disputes that arise during the implementation process are handled, and if we say it's okay for the parents because they believe that it is futile without there being any showing that they have gone to an administrative process and haven't been able to get a remedy, is that instead of trying to work it out for the benefit of the child and then, as Judge Clifton posited, whatever is left over that hasn't been able to be remedied can be properly brought in before a Federal court. But to make a Federal case out of it before it has exhausted these administrative remedies seems to me is not in the interest of the child. The child is not going to benefit from any money given to his or her parents unless it has an interim effect on districts in this district or other districts. And that is the policy question that's presented by this case as I see it. I appreciate the angle coming out in terms of what is the benefit of the child. We've approached this, and our claim is exclusively literally related to what was done to the Katases, the non-educational injuries. Their education is not at issue. The non-educational injuries and harm that they suffered. And the allegations of the complaint deal with, and if we go through the litany, deal with things that we believe and still do believe cannot be remedied by the administrative process. Can I ask you one just procedural question? Yes. The complaint was dismissed without prejudice. Then four days later, the judgment was entered. Did you understand the dismissal without prejudice to be with leave to amend or without leave to amend? We believe it was without leave to amend. All right. So it was without prejudice in the sense that it was saying it didn't reach the merits and not barred from filing other. I believe that's accurate. Yeah. The term without prejudice seems to be used in both senses. All right. Thank you. Thank you. Good morning, Your Honors. My name is Carol Wu, and I represent the Respondents. There is really no compelling reason for the Court to reverse the district court's order granting the motion to dismiss for failure to exhaust administrative remedies. Under the IDEA, the purpose is to address educational issues as soon as they arise and to have local educational agencies deal with those issues before you move on to the court system. Under the IDEA, the exhaustion requirement has been interpreted very broadly. You can bring under the IDEA due process proceeding. It's just not limited to the challenging of the scope of an existing IEP. You can or a party can challenge any matter relating to the identification, evaluation, or educational placement of the child, and that is embodied in education of 20 United States Code section 14. You're not saying that a retaliation claim by the parents could be brought under IDEA? Well, what the case law has demonstrated to us is that, basically, the main claim is the child. The IDEA is there to protect the child. I just may not be understanding what you're saying. I mean, the parents here have presented a claim on their own behalf. Correct. Saying the school district has abused us because they didn't like that we were the squeaky wheel, whatever else. Is that a claim that you think has a remedy under IDEA? The case of Robb v. Bethel addressed that issue. And in that case ---- Well, did it answer yes or no? I mean, is there a yes or no answer to that question? It said that it would provide the going through the administrative process for the parent could provide relevant information as to Robb's claims. That's something different. I really am trying to get your position here. I'm trying to find out if you're saying the claim the parents brought is one that's I just heard you start talking, was, you know, there's an overlap here and there are remedies through the administrative hearing process that could speak to the situation and alter the parent's claim and the exhaustion process is broad. But I just heard you talk in terms of what IDEA covers. And I thought you heard something that I heard you say something that suggested that there may be a claim for this under the Act itself. And I think the answer to that question is no. The parent's claim is something separate. But I haven't been able to get that answer from you, so I'm going to continue to probe until I find out what you think the Act covers. I think that theoretically under the IDEA, the parents ---- the parents cannot dictate the form of the damages that they want. Under Robb, you have to exhaust your administrative remedies if the injury can be redressable to any degree under the IDEA procedures. Say, for instance ---- Whose injury? I think that in this particular case, the parents, I mean, potentially their injury could be at least in part redressed under the IDEA procedures because the parents would claim, you know, as perhaps part of their damages ---- Well, they're seeking money damages for retaliation. No, they are not. But you cannot dictate the form of the remedy under the IDEA. As long as there is an element that is redressable under the IDEA, you have to go through the administrative process. So what could happen is that under the IDEA process, the CEHO officer, the administrative hearing officer, could provide the parents with nonmonetary damages that could compensate them for their emotional distress. How would they have dealt with the ---- just take one of the allegations. Repeatedly set Shane's IEP on the same date and time but different location as the IEP for Katase's other child. Taking that allegation as true, the administrative proceeding could ---- I mean, they are empowered to make an order that, you know, I suppose that the IEP appointment or the notice of the IEP cannot overlap onto their other child's IEP. Okay. How quickly can that be achieved? In other words, let's suppose that's what they're doing. He's in middle school. Okay. How long does that process take before that kind of order can be obtained? Well, it depends from case to case, but the parents would initiate a due process hearing and there would be a period of discovery. You know, the parties could go out and propose to the experts and things like that, and it would get to a hearing. It would be accomplished within the school semester, within a year? Sometimes, sometimes not. But I would ---- A lot of these things seem to be day-to-day or week-to-week or month-to-month interferences with the parents' interaction with the school and with their children. And you're saying that an administrative proceeding should be resorted to, even if it may be at the end of the school year, mooted out, at least as far as that grade level is concerned. Well, under this particular circumstance, because the parents did not agree on ---- the parents and the district did not agree on what would be in Shane Kutazy's IEP, Shane would have to remain ---- there would be a stay-put order, and the last agreed-upon IEP would be in effect. Meanwhile ---- May I just ask you this, because it helped me understand this. At the time the complaint was filed in the district court, the child was being schooled at home, right? He was ---- yes, I believe so, that he was being homeschooled. Had the parents dropped any action or claim that they wanted the child to have an IEP during the rest of his education, or had they settled already for homeschooling? No. Homeschool was a part of the IEP, and that would be in effect through the stay-put order. But what happened was the parents did at one point file for a due process hearing, and that was for the 03-04 school year. The district, meanwhile, filed for a due process to determine Shane Kutazy's future placement, his future IEP for the 04-05 school year. The Kutazy subsequently, on the eve of the due process hearing, withdrew their due process request. Therefore, the district proceeded on. And what you see in the excerpts, the supplemental excerpt of the record, is the CEHO order. Now, what happened subsequently to that was the district exercised its 90-day right to appeal that CEHO order. So to this day, Shane Kutazy's, his educational placement remains in dispute. But ---- If the parents or the child withdraws any claim ---- Pardon? If the parent or the child withdraws any claim about the order that's in existence, the dispute is carried on by the school district? Because the school district filed for due process hearing for a different school year, for a at that time was the 04-05 school year, because they were stuck. They could not agree on Shane Kutazy's educational services when he got into middle school. When we ---- when the lawsuit was filed ---- Well, what do you mean they couldn't agree? The parents had withdrawn any protest of the plan. Well, that was for the past. The parents had filed for due process for 03-04. The school district, in order to get Shane Kutazy into middle school, they needed to have a new IEP. You have to do a new IEP periodically. Generally, it's on a year-to-year basis, which sets out his goals and the services that are going to be provided. And they have not ---- had they or haven't they set forth a plan for those years? No, because the educational services for the 04-05 school year, the parents and the school district have to both agree on what the services are going to be. They were unable to reach that agreement, and basically they were at a standstill. So the last agreed-upon IEP would then, you know, be enforced. Well, were the parents protesting that? Were the parents protesting? Were the last IEP? They could not agree on the ---- No, no. I understand they didn't agree, but that doesn't mean you can't abide by it. Were they protesting and suggesting that they wouldn't follow that? Well, they didn't agree to it. The disagreement was that the parents were very much in favor of Shane being what they called mainstream, and that is putting him into a regular school classroom. The district, on the other hand, proposed to put Shane into two class periods per day mainstreaming, and then the other one ---- I understand there was a disagreement about what should be done. But the question is, you know, the disagreement can be resolved if the parents accept it. That didn't happen. But they didn't decide to homeschool him. That was part of the last agreed-upon IEP. I mean, what can happen is if the parents don't agree on the future place educational services for this child, I mean, they have the option of taking their child out of the school system if they wish and putting them in a private school or having private services. And they can either fight it or they can abandon the fight. Well, they can ---- correct. They can ---- you can exhaust your administrative remedies and, you know, after you've done that, you can go to court and then you can ask for reimbursement. No, no. Without exhausting it, suppose the parents decided I've had enough of the school district. Okay. I'm going to put him in private school or I'm going to educate him at home. Then there wouldn't be anything left to go to the administrative body. I see what the Court is saying. Yes. Judge Reinhart, I understand what you're saying. If the child is totally out of the school system and they put him in a private school, well, what would happen is the parents still would want reimbursement from the school because the school has an obligation to provide the student with an education. And the school then would have the responsibility of ---- I mean, it's not unusual for parents to go back to a public school and say, I want you to provide tuition for me placing my child in private school. But what the parents have to generally prove is that the public school could not serve that child's educational needs under the IDEA. And in a lot of the situations, you get where the child is in public school and the school cannot provide educational services for the child 100 percent. All right. Can I ask one question? And just so I understand, in light of Judge Reinhart's questions, the district court said and dismissed this without prejudice, presumably on the theory that they would go exhaust the administrative remedies insofar as any of their claims alleged could be addressed administratively in whole or in part. Correct? Yes. Okay. Now, given the posture of the case, of his school situation, what would happen on the picking the ground that the district court relied on? The allegation refused to allow Shane to attend ---- excuse me, repeatedly refused to reimburse the Katases for Shane's therapy. Now, the district court thought that that could be remedied, as I understand it, by a reimbursement order by the administrative process. Is that still true? Is that something they could go back, even with the abandonment of the 03-04 challenge? What is it that they could do? I think on the reimbursement issue that that issue might be moved because I know that the Katases did bring a state court proceeding to enforce. It was couched in terms of a breach of contract, and what it was for was reimbursement of educational services that the district was bound to pay. All right, let me ask you, maybe I can bottom line it this way. If we were to agree with the district court and affirm the failure to exhaust ruling, the district court did not go through and say every one of those claims was addressable in the administrative proceeding. It was looking to the administrative process to sort it out. Let's assume we affirm the district court. At this stage of the relationship between the parents and the school district, what administrative proceeding is now open to address any of the claims that they complain? Well, currently there is an ongoing due process proceeding that's been appealed to the federal court. That's not my question. What is available to them to address the issues that were alleged in their complaint? Is the ongoing administrative proceeding addressing any of those issues? It could. But it isn't yet? Not yet. Okay, because this is the ongoing appeal relating to, but it's already gone through the district court, what, that maintains them in homestay, homeschooling? Pardon me. I'm not sure I am. What is the ongoing administrative proceeding appeal? The ongoing administrative appeal pertains to the excerpts, the supplemental excerpt that was filed by the Petitioner, and that had to do with Shane Kutazy's future placement. But I would think that In that proceeding, these, some of these allegations that they could bring forward could be addressed. I could. I would think that that would be the case, because you've got, the allegations are of a historical nature, and that those allegations may, you know, play a part in the current due process proceeding, because the parents are claiming that they were basically denied their parental rights, you know, in trying to reach an agreement on Shane's educational services. And those have not been mooted out? In other words, on repeatedly set Shane's IEP on the same date and time, that is still a live issue? I guess it could be a live issue if that's what the, if they want to make it that. I mean, there could be. What's the remedy that could be granted? The remedy would be that they can't do that, that they need to set it. Even though he's not in the, is he still in the middle school? I know he's being held at home. He never went to middle school. But if he were reverted to the school. If he were reverted to the school, the CEHO officer could make an order regarding the scheduling of IEPs. All right. That would be a non-monetary order that it could make. Okay. Just to wrap things up, the cases that the plaintiffs have brought to the Court's attention, all of those cases, Witte v. Clark. We're familiar with the cases. We helped write them. Thank you. Thank you, counsel. I would just like to point out that the CEHO that we're talking about, which was determined in September of 2005, basically was a decision that the appellees failed to provide Shane with a free and appropriate public education. It appears that the appellees believe that if you give the catastases relief, you'll render the exhaustion requirements meaningless, which would be somewhat absurd. But the result that they are arguing also has absurd consequences. For example, it would appear that if a dispute simply arises out of the IDEA, then whatever they do against the catastases, they have carte blanche to do it, and the catastases would have to first administratively explore their rights, which they don't have through an administrative process. So, for example, and this is an extreme example, if they were to have struck the catastases after these incidents or after simply there was a dispute about the placement of their son, the catastases under their interpretation would have to go through the administrative process to talk about how the school has actually assaulted them. I'm not so sure that's the essence. In any event, that wasn't the essence of the district court's ruling. The district court's theory was that there are some of these allegations that could be remedied in whole or in part by the administrative process. So come back after you winnowed out or made the record. For example, if you're going to get emotional distress damages, it seems to me an element of the emotional distress would be whether or not these scheduling conflicts were created, which they probably would, enormous emotional tension in the family. But if they could have been remedied by simply getting an order from an administrative judge saying, you can't do that, district, that ended the problem. See, that's the problem I'm having. There is a process that's in place. We sometimes call it mediation. Here it's an administrative process. I disagree with Ms. Wu, though, in terms of her responses as to that the catastases could actually remedy the other allegations in the complaint. I don't see how they could go to any administrative hearing and have any of those things addressed. It's just not available. Thank you, counsel. Thank you. The case is submitted. The court will stand in recess for a brief period.
judges: Reinhardt, Fisher, Clifton